**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,

v.

AMADOR RIVERA,

3:94 CR 223 (CSH)

OCTOBER 7, 2013

## RULING ON DEFENDANT'S PRO SE MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2)

**HAIGHT, Senior District Judge:**

## I.   INTRODUCTION

Defendant Amador Rivera, a federal prisoner, brings the pending *pro se* motion seeking reduction of his sentence, pursuant to 18 U.S.C. § 3582(c)(2), which authorizes the court to reduce a sentence that is "based on a sentencing range that has been subsequently lowered by the Sentencing Commission." Specifically, Rivera bases this motion on Amendment 750 to the Sentencing Guidelines, effective November 1, 2011, which lowered the base offense levels applicable to cocaine *base* ("crack") offenses.[1] For the reasons set forth below, the Amendment does not apply to Rivera's case in that his sentence on his narcotics distribution charges was not based on a guidelines calculation premised on cocaine base. Moreover, even if the Court were to apply the Amendment, it would not lower Rivera's overall guideline range for his convictions. His other violent predicate

---

[1]   *See* U.S.S.G., App. C, Amend. 750  (eff. Nov.1, 2011)  (amending, *inter alia*, the drug quantity table in U.S.S.G. § 2D1.1(c)); *see also id.*. Amend. 759 (making Amendment 750 applicable retroactively).

acts would still result in a combined base offense level of 43, the highest level under the guidelines.

In brief, Rivera was convicted on four charges:  Count One for drug conspiracy (Act One) and conspiracy to murder Latin Kings (Act Four) under RICO, 18 U.S.C. § 1962(c); Count Two (RICO conspiracy), 18 U.S.C. § 1962(d); Count Ten (Conspiracy to Murder Latin Kings), 18 U.S.C. § 1959 (a)(5); and  Count Thirty-Four (Hudson Street Drug Conspiracy), 21 U.S.C. §§ 846 and 841(a)(1) .

As the Government argues in summary, putting aside the guidelines calculations relating to Conspiracy to Possess with Intent to Distribute Controlled Substances (Count 34) and the related drug conspiracy acts in the RICO counts of Rivera's conviction (Counts One and Two), the guidelines calculations applicable to Rivera's predicate acts in the RICO counts related to Conspiracy to Murder Latin Kings (Counts One, Two, and Ten)  independently call  for a sentence of more than the statutory maximum of twenty years per count  – "indeed, more than the total effective Amended sentence of 480 months that was imposed by the Court [Dorsey, *J.*] pursuant to its January 15, 2003, Ruling on . . . a Rule 59, Fed. R. Civ. P., motion" to alter judgment.  Doc. 2535 (discussing Doc. 2277).  By cross-reference to first-degree murder, United States Sentencing Guideline ( "U.S.S.G.") § 2A1.1, Rivera's combined base offense level for his four offenses was 43, the highest such level under the Sentencing Guidelines.  That base offense level, combined with Rivera's criminal history category of V, would permit the imposition of a maximum life sentence where the convictions in Counts One and Two included the "racketeering activity" of conspiracy to murder.

## II.  PROCEDURAL BACKGROUND

In *United States v. Jorge Rivera, et al.*, No. 3:94CR223 (PCD), a racketeering action

involving over thirty-six defendants, Amador Rivera was charged in Counts One, Two, Ten, Eleven and Thirty-Four of the Third Superceding Indictment.   Following a full trial on the merits, Rivera was convicted on Count One (Racketeering/RICO, 18 U.S.C. § 1962(c)); Count Two (Racketeering/RICO Conspiracy, 18 U.S.C. § 1962(d)); Count Ten (Violent Crimes in Aid of Racketeering Activity ("VCAR") - Conspiracy [to Murder Latin Kings], 18 U.S.C. § 1959(a)(5)); and Count Thirty-Four (Conspiracy to Distribute Controlled Substances, 21 U.S.C. § 846). The jury was not able to reach a verdict on Count Eleven (VCAR - Murder [Angel Serrano]),   18 U.S.C. § 1959(a)(1)), and a mistrial was declared as to that count. Thereafter, the Court (the late Honorable Peter C. Dorsey, then Chief Judge) imposed a total effective sentence on Rivera of life imprisonment, a term of 5 years' supervised release, and a mandatory $400 special assessment.[2]

Rivera appealed his conviction and his sentence.  The Second Circuit, by Summary Order dated September 14, 1999, affirmed both. *See United States v. Rivera*, No. 96-1752.  On October 15, 1999, the mandate of the Second Circuit was issued.  Doc. 2119.  Rivera thereafter applied for a writ of certiorari from the United States Supreme Court, but the application was denied.  *See Rivera v. United States*, 528 U.S.1130 (2000).

On February 4, 2000, Rivera filed a motion for modification of his sentence [Doc. 2128]; and on March 1, 2000, that motion was denied [Doc. 2138].  On January 17, 2001, Rivera filed a motion to vacate his sentence under 28 U.S.C. § 2255 [Doc. 2187], which was denied on April 6, 2001 [Doc. 2206].  On April 19, 2001, Rivera filed a "Letter Motion" [Doc. 2211], seeking reconsideration of

---

[2]   Specifically,  Rivera was originally sentenced  to terms of life imprisonment on Counts One and Two, racketeering and racketeering conspiracy, in violation of 18 U.S.C. § 1962(c) and (d); life on Count 34, conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 846 and 841(a)(1); and ten years imprisonment on Count Ten, conspiracy to commit a violent crime in aid of racketeering (murder), in violation of 18 U.S.C. § 1959(a)(5).

the denial of his § 2255 motion.  The Court granted reconsideration on that same date [Doc. 2212].

After becoming fully briefed, the reconsidered motion to vacate [Doc. 2187-1] remained pending for a number of months because the Court (Dorsey, *J.*) reserved judgment while awaiting the Second Circuit's decision on his prior rulings in *Parise v. United States*, 117 F.Supp.2d 204 (D.Conn. 2000) and 135 F.Supp.2d 345 (D.Conn. 2001).  The Second Circuit filed the awaited decision on November 18, 2002.  *See United States v. Luciano*, 311 F.3d 146 (2d Cir. 2002) (*sub. nom.*).[3]

Judge Dorsey then ruled on the motion to vacate [Doc. 2187-1]. Citing *Luciano*, he explained that "*Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] requires that a sentence not exceed the maximum allowed by statute unless facts that may permit a more severe maximum sentence, such as drug quantity, are found by a jury beyond a reasonable doubt." *Rivera v. United States*, Nos. Cr. 3:94CR223 (PCD) & Civ. 3:01CV76 (PCD),  2003 WL 22359252, at *2 (D. Conn. Jan. 14, 2003) (citing *Luciano*, 311 F.3d at 151).  Rivera had argued that the life sentences imposed upon him violated *Apprendi* as requisite facts pertinent to his sentence (*i.e.*, the quantity of drugs at issue) were not found beyond a reasonable doubt by the jury.  *Id.*  Rejecting the Government's argument that *Apprendi* should not be applied retroactively, the Court vacated its prior rulings, thereby granting

---

[3]  In *Luciano*, the Second Circuit explained that "[i]n *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)],  the Supreme Court held that 'any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" 311 F.3d at 150 (quoting *Apprendi*, 530 U.S. at 490).  Moreover, "[t]he touchstone of the constitutional inquiry under *Apprendi* is whether the sentence actually imposed, on the basis of drug quantity not found by the jury, exceeds the statutory maximum that would have applied in the absence of such a finding." *Id.*  Put simply, "[v]iolation of *Apprendi* arises when the defendant is sentenced on the basis of a triggering fact not found by the jury to a sentence that exceeds the maximum that would have been applicable but for the triggering fact. If the defendant's sentence is within the otherwise applicable maximum, no violation of *Apprendi* has occurred . . ." *Id.* at 151.

Rivera's previously filed motions to alter sentence [Doc. 2206] and to vacate under 28 U.S.C. § 2255 [Doc. 2187] pursuant to Rule 59, Fed. R. Civ. P.[4]   2003 WL 22359252, at *2.   Judge Dorsey altered Rivera's sentence, lowering that sentence to correspond to "possession of an *unspecified amount* of cocaine," as follows:

> The life sentence imposed is hereby modified to a term of imprisonment as follows: twenty years on Count One concurrent to ten years on Count Ten and twenty years on Count Two concurrent to twenty years on Count Thirty–Four. The combined sentences for Counts One and Ten shall run consecutively to the combined sentences on Counts Two and Thirty–Four for an effective sentence of forty years. The term of supervised release is modified to three years on each of the four counts to be served concurrently and consecutively as provided above for an effective term of supervised release of six years.

*Id.*, at *3.[5]

As the Probation Office later pointed out in its "Retro-crack Addendum," under his resentencing on January 15, 2003, Rivera's effective sentence of forty years was a non-guidelines sentence in that "under § 5G1.2(d), his guideline sentence would be 70 years in total [20 plus 20 plus 10 plus 20, for the four counts]." Doc. 2533-3, p. 1.   In light of the guideline range of life imprisonment, the guidelines dictated that the sentences on the multiple counts at issue "shall run consecutively," rather than concurrently.   *See* U.S.S.G. § 5G1.2(d).   Although not explicitly stated in the Amended Judgment, Judge Dorsey's imposition of a 40-year sentence was a substantial downward departure in Rivera's favor.

---

[4]   As the Government noted in its response to Rivera's current motion, four months after Judge Dorsey's Ruling in *Rivera*, "[o]n May 7, 2003, in *Coleman v. United States,* 329 F.3d 77, 90 (2d Cir. 2003)[, *cert. denied*, 540 U.S. 1061 (2003)], the Second Circuit squarely held that *"Apprendi* does not apply retroactively to "initial section 2255 motions for habeas relief." Doc. 2535.

[5]   On April 21, 2003, the Court amended its judgment order by directing that all periods of imposed supervised release be served concurrently with each other for a total effective supervised release period of 3 years. Doc. 2287.

In the intervening period from Judge Dorsey's January 2003 Ruling until November 2011, Rivera filed forty-six motions, pleadings, requests for relief, and applications.[6]  Included in those filings was a March 11, 2008 letter in which Rivera moved for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense [Doc. 2431] – *i.e.*, reduction of his sentence on Count Thirty-Four, conspiracy to distribute controlled substances.  On September 17, 2008, Judge Dorsey denied this application, holding that Rivera was not eligible for relief because he had been sentenced to the mandatory minimum term of twenty (20) years imprisonment on Count Thirty-Four.[7]

On November 11, 2011, Rivera executed the pending *pro se* motion to reduce his sentence based on the amended U.S.S.G. § 1 B1.10 policy statement, regarding retroactive application of the

---

[6] This "unending stream of frivolous filings" prompted Judge Dorsey to enter an order requiring Rivera "to request" the Court's "permission before filing any additional pleadings." Doc. 2527.

[7] In his "Order on Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense" (filed 9/17/2008), Judge Dorsey explained his ruling as follows:

> Mr. Rivera was subject to a twenty year mandatory minimum sentence on Count 34, the conspiracy to distribute controlled substances charge. Mr. Rivera was indeed sentenced to twenty years imprisonment on Count 34, which is the minimum sentence required by statute. Changes to the sentencing guidelines do not alter the statutorily mandated minimum sentence, and as a result, Mr. Rivera is not eligible for a reduction in sentence. Therefore, the Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense [Doc. No. 2431] is hereby **denied.**

Doc. 2447, p. 1 (emphasis in original).  This Court notes that under 21 U.S.C. § 841(c), "[i]n the case of a controlled substance in schedule I or II, . . . such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life . . ."  On Count 34, Judge Dorsey actually imposed a 20-year sentence, the maximum allowable under 21 U.S.C. § 841(c).  *See* 2003 WL 22359252, at *3.  He made no finding regarding an applicable mandatory minimum sentence.

new crack guidelines (a/k/a "Amendment 750").  In response to this motion, on November 18, 2011,

the United States Probation Office filed a "Retro-Crack Addendum" to Rivera's Pre-Sentence Report

("PSR") [Doc. 2533], addressing the issue of whether Rivera's sentence is eligible for retro-crack

reduction and concluding that it was not.   The Government agreed with the Probation Office's

Addendum and thus filed an opposition to Rivera's motion for a retro-crack reduction in his sentence

under Amendment 750.   As set forth below, this Court, to which the case has been transferred [Doc.

2543] upon Judge Dorsey's passing, concurs that Rivera's sentence is indeed not eligible for

reduction.


III.   **DISCUSSION**

   A.   **18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10**

        Rivera presently moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(2).

That statutory provision, captioned "Modification of an imprisoned term of imprisonment," states

in pertinent part:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based
> on a sentencing range that has subsequently been lowered by the Sentencing
> Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . , the
> court may reduce the term of imprisonment, after considering the factors set forth in
> section 3553(a) to the extent that they are applicable, if such a reduction is consistent
> with applicable policy statements issued by the Sentencing Commission.

        The Sentencing Commission's applicable policy statement appears in U.S.S.G. § 1B1.10(a),

which provides that where "the guideline range applicable to [a defendant serving a term of

imprisonment] has subsequently been lowered as a result of an amendment to the Guidelines Manual

. . . , the court may reduce the defendant's term of  imprisonment as  provided by 18  U.S.C.

§ 3582(c)(2)."[8]  The same subsection is explicit, however, that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [the guidelines amendment] does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B) (emphasis added).

In general, § 1B1.10 of the Sentencing Guidelines identifies amendments which may be

---

[8]  The pertinent version of Section 1B1.10 for purposes of the pending motion became effective on November 1, 2011.  Amendment 759 clarified that a sentencing court shall use the version of § 1B1.10 that is in effect on the date on which the court reduces the term of imprisonment. U.S.S.G. App. C, Amend. 759 (2011); U.S.S.G. § 1B1.10 cmt. n. 6.

With respect to "Authority" for "Reduction in Term of Imprisonment as a Result of Amended Guideline Range," the pertinent version of § 1B1.10(a) provides:

(1)     In General. – In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. 3582(c)(2). As required by 18 U.S.C. 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

(2)     Exclusions. – A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if –

(A)     None of the amendments listed in subsection (c) is applicable to the defendant; or

(B)     An amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.

(3)     Limitation. – Consistent with subsection (b), proceedings under 18 U.S.C. 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.

U.S.S.G. § 1B1.10 (a) (1)-(3).

applied retroactively pursuant to § 3582(c)(2) and the proper procedures for implementing said amendments.[9]   To determine whether a reduction of sentence is warranted in a specific case, the district court must first "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1).  The court must then calculate the amended guideline range by substituting the amended offense level of § 2D.1.1(c), but "shall leave all other guideline application decisions unaffected." *Id.*

The United States Supreme Court has held that the process for applying a retroactive guideline amendment set forth in § 1B1.10 is binding, such that "[a]ny reduction must be consistent with applicable policy statements issued by the Sentencing Commission." *Dillon v. United States*, 560 U.S.817, 130 S.Ct. 2683, 2688 (2010).  Pursuant to 18 U.S.C. § 3582(c)(2), the Court must first "follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 130 S.Ct. at 2691.  In particular, § 1B1.10(b)(1) requires the Court to determine the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the

---

[9]   Section 1B1.10 is based on 18 U.S.C. § 3582(c)(2), and also implements 28 U.S.C. § 994(u), which provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced." Guideline amendments may only be applied retroactively if they are explicitly listed in § 1B1.10(c). *See United States v. Perez*, 129 F.3d 255, 259 (2d Cir.1997) ("U.S.S.G. § 1B1.10(c), which governs the retroactivity of Guideline amendments[,] . . . specifies which amendments a defendant may invoke pursuant to § 3582(c)(2).").

initial sentencing.[10]  *Id.*  Then, "[a]t step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 2692.  The Supreme Court also emphasizes the limited action permissible by the Court in making such a sentence reduction, specifying that "§ 3582(c)(2) authorizes only a limited adjustment to an otherwise final sentence." *Id.* at 2691.

### B.   Amendment 750

In the case in suit, the amendment Rivera cites in his request for a reduced sentence is part A of Amendment 750.  That amendment modified the offense levels in Sentencing Guidelines § 2D1.1– those applicable to *crack* cocaine offenses.[11]  The Sentencing Commission added that this amendment to § 1B1.10(c) is a retroactive amendment.

Rivera's original sentence on December 5, 1996, was based on the sentencing guideline range related to the amount of *cocaine* (*i.e.,* powder cocaine) at issue and *no*t of cocaine *base* (*i.e.*, *crack*). U.S.S.G. § 2D1.1(c)(3). Because the calculations were premised on the guideline for the relevant

---

[10]  At this first step, the essential determination by the Court is whether the defendant is eligible for a reduction in sentence – *i.e.*, whether the defendant's sentence was "based on" a sentencing range that has subsequently been lowered by the Sentencing Commission.  *See, e.g., United States v. Leonardo*, No. 12–3685–cr, ___F. App'x ___, 2013 WL 3596062, at *1 (2d Cir. July 16, 2013).   If the sentence is ineligible, the Court's analysis ends there.

[11]  The Sentencing Commission lowered the base offense levels for crack cocaine offenses pursuant to the Fair Sentencing Act of 2010, 21 U.S.C. § 801 (2010), which became effective on August 3, 2010.  The Act was designed to "restore fairness to Federal cocaine sentencing" by ending the long criticized disparity in sentencing between crack cocaine and powder cocaine offenses.  *See* Preamble, Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat. 2372 (2010). Notably, the Act increased the quantities of cocaine base necessary to earn five-year and ten-year minimum sentences under 21 U.S.C. § 841(b).  The Act also  directed the Sentencing Commission to implement comparable changes in the pertinent sentencing guideline.

quantity of cocaine, and not of any additional crack Rivera distributed or sold, Amendment 750 provides no basis upon which to lower the applicable sentencing guideline range for Rivera's charges.

Specifically, Rivera's guideline range was calculated based on findings that the primary controlled substance involved was cocaine, as opposed to cocaine base or "crack."  The quantity of cocaine attributable to Rivera was 15 to 50 kilograms.  *See* Probation Office's "Retro-Crack Addendum," Doc. 2533, p. 1 ("It is noted that the Court found that the defendant's relevant conduct under U.S.S.G. §1B1.3 involved at least 15 but less than 50 kilograms of ***cocaine***.") (emphasis in original).  *See also*  PSR (Doc. 2533-2), ¶ 19 ("Based upon the Government's information, it is conservatively estimated that the Hudson Street Drug Conspiracy involved at least 15 kilograms but less than 50 kilograms of cocaine.")(citing and applying U.S.S.G. § 2D1.1(c)(3) to find base offense level of 34); Sentencing Transcript (12/5/96) at 14, 20, 35.  Judge Dorsey's formal "Statement of Reasons" ("SOR") for imposing Rivera's sentence explicitly provides that the Court "adopt[ed] the undisputed  factual statements contained in the PSR," Doc. 2533-4, ¶ 1 (Findings of Fact), and found that "the drug amount is accurately calculated at at least 15 kilograms of cocaine . . . . ," *id.*, at 3.[12] The Court applied the guideline range pertaining to 15 kilograms of *cocaine*, finding that such estimate "is not unreasonable in light of the daily amount of money taken in as drug sales proceeds." *Id.*  (emphasis added).[13]

---

[12]   When  imposing the original sentence, the Court  recognized that Plaintiff's criminal activity also included  "at least 50 grams cocaine base," but the Court simply used the base offense level for "at least 15 kilograms of cocaine," as suggested by the Probation Office.  Doc. 2533-4, p. 3.

[13]   Rivera argues that cocaine base was also included in the Court's calculation of 15 to 50 kilograms of cocaine when determining the appropriate guideline range. Doc. 2542, p. 4. The Court,

When Judge Dorsey resentenced Rivera on January 15, 2003, he once again referred to "cocaine" as the relevant substance at issue, as opposed to crack.  Furthermore, he concluded that, absent "a jury finding as to the quantity of drugs beyond a reasonable doubt which would permit a sentence higher than the maximum for simple possession of an unspecified amount of drugs," the sentence he would impose for "a violation involving *cocaine*" in Count Thirty-Four would "not exceed the maximum sentence in 21 U.S.C. 841(b)(1)(C) of twenty years."   2003 WL 22359252, at *3 (emphasis added) (citing *United States v. Burrell*, 289 F.3d 220, 224-25 (2d Cir. 2002)).  He essentially discounted the actual amount of cocaine at issue and re-sentenced on the basis of an "unspecified amount of drugs." *See* 21 U.S.C. § 841(b)(1)(C) ("In the case of a controlled substance in schedule . . . II [which includes cocaine], . . .  such person shall be sentenced to a term of imprisonment of not more than 20 years . . .").

Because the controlled substance used to calculate Rivera's sentence was again  powder cocaine, as opposed to cocaine base or crack, Amendment 750 provides no lawful basis to reduce his sentence.  Pursuant to 18 U.S.C. § 3582(c)(2), a defendant's sentence may only be reduced if he or she was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  *See e.g.*, *United States v. Korbe*, 518 F. App'x 97, 98 (3d Cir. 2013) (affirming district court's order denying federal prisoner 's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) because prisoner's "240 month statutory mandatory minimum sentence was independently based on his *powder* cocaine offenses;" "Amendment 750

---

however, found that there were independently at least 15 kilograms of cocaine, plus likely at least 50 more grams of cocaine base.  Tr. at 32, 34.  The 15 kilograms of cocaine powder  were the basis for the Court's application of the base offense level of 34, U.S.S.G. § 2D1.1(c)(3).  Any additional grams of cocaine base had no net effect in determining the applicable guideline range.

could not have the effect of lowering Korbe's applicable Guidelines range because the mandatory minimum for his powder cocaine conviction was unaffected by that amendment."). *See also United States v. Bates*, No. 06 CR 580(DRH), 2013 WL 1820907, at *3 (E.D.N.Y. April 30, 2013) ("When a defendant's sentence 'was not based on the crack cocaine guidelines,' that defendant is 'ineligible for a sentence reduction.'") (quoting *United States v. McPherson*, 435 F. App'x 17, 18 (2d Cir. June 17, 2011), *cert. denied*, __ U.S. __, 133 S.Ct. 1303 (2013)); *United States v. Britt*, No. 04 Cr. 67(RMB), 2012 WL 3834630, at *2 (S.D.N.Y. Aug.15, 2012) ("Defendant was not sentenced under the crack cocaine guidelines and he is, therefore, not eligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2)."). *See also United States v. Milton*, No. 4:07cr18–RH, 2012 WL 3537024, at *2 (N.D. Fla. Aug. 14, 2012) ("Amendment 750 does not authorize a sentence reduction for a person whose guideline range has not been lowered.").

## C.   Overall Sentencing Guideline  - Combined Base Offense Level

Finally, even if this Court were to apply Amendment 750 to defendant's controlled substance offenses (Counts One, Two and Thirty-Four), his overall guideline range would remain unchanged due to his relevant conduct or predicate acts  with respect to Conspiracy to Murder Latin Kings in Counts One, Two, and Ten.  As set forth in the PSR, ¶ 26, under U.S.S.G. § 1B1.3 by cross reference to U.S.S. G. § 2A1.1 (the guideline for First Degree Murder), the base offense level for this separate conduct of conspiracy to murder was 43, the highest base offense level under the Sentencing Guidelines.  Judge Dorsey made a specific finding that the base offense level was 43.  Doc. 2533-4, p. 5.  Combined with Rivera's criminal history level of V, Rivera was subject to a maximum sentence of life imprisonment on the RICO conspiracy charges in Counts One and Two, 18 U.S.C. § 1962(c),

13

(d).[14]

The Sentencing Guidelines establish a guideline range for each defendant. That range is based on the defendant's "total offense level" and "criminal history category." The total offense level is based on the defendant's "base offense level" with increases or decreases based on specific offense characteristics.[15]

In the case at bar, the Court adopted the Probation Office's grouping of Rivera's offenses into two groups. Group One included the counts relating to the distribution of narcotics: Count One (Racketeering Act 1C (drug conspiracy)); Count Two (RICO conspiracy), 18 U.S.C. § 1962(d); and Count 34, 18 U.S.C. § 1962(c), 21 U.S.C. §§ 846 and 841(a)(1). The base level for that group was first calculated as 34 with respect to the amount of kilograms of cocaine involved in these offenses (15 fo 50 kilograms).[16] Doc. 2533-2, p. 15 (citing § 2D1.1(c)(3) (which establishes base offense level of 34 for offenses involving at least 15 kilograms but less than 50 kilograms of cocaine). Additional points were included for Rivera's "aggravating role as a manager or supervisor" in the crimes (3 points). *Id.*, p. 15 (citing U.S.S.G. § 3B1.1(b). The total base offense level for Group One was thus 37. *Id.*

---

[14] When the Court resentenced Rivera, it effectively decided to depart downward from the maximum sentence allowable on Counts One and Two by applying Connecticut state law for conspiracy to murder. Once again, Judge Dorsey did not sentence Rivera under the crack cocaine guidelines.

[15] For drug offenses, the base offense level ordinarily turns on the type and quantity of drugs properly attributed to the defendant. *See* U.S. Sentencing Guidelines Manual ("Guidelines Manual") § 2D1.1 (2011). Here, with respect to Counts One, Two and Ten, the defendant's base level turned on his conspiracy to commit murder.

[16] During Rivera's original sentencing, the base level for those offenses was 34 based solely on the amount of *cocaine* at issue – without any consideration of an amount of crack.

Group Two consisted of the counts relating to conspiracy to murder:  Count One (Racketeering Act 4, conspiracy to murder Latin Kings);  Count Two (RICO conspiracy), 18 U.S.C. § 1962(d);  and Count Ten, 18  U.S.C. § 1959(a)(5).  The base level for Conspiracy to Murder is guided by § 2E1.3 of the Guidelines, which establishes a base level of 12 or "the offense level applicable to the underlying crime or racketeering activity."  Where the underlying offense was Conspiracy to Murder Latin Kings and Associates, § 2A1.5(c) governed, which dictates that "[i]f the offense resulted in the death of a victim, apply § 2A1.1 (First Degree Murder)."  In Rivera's case, a a victim, Angel Serrano, actually died as a direct result of the conspiracy to murder.[17]  The base level for First Degree Murder is 43.  U.S.S.G. § 2A1.1(a).   Thus, by cross reference to § 2A1.5(c), the base offense level for Group Two was 43.  Rivera was also subject to a 2 point enhancement for his role as a "manager or supervisor of a criminal activity involving five or more participants."  Doc. 2533-2, p. 16 (citing U.S.S.G. § 3B1.1(c)).  His total adjusted offense level for Group Two was thus 45.

Finally, when combined and adjusted per U.S.S.G. § 3D1.4, Groups One and Two yielded a combined adjusted base level of 46.[18]  Doc. 2533-2, p. 16.  The Court, however, adopted level 43

---

[17]  "The  Government's  proof at trial established that Amador Rivera was a member of an enterprise which engaged in drug trafficking and acts of violence, including murders, assaults, kidnapping [sic] and robberies, which were all done in furtherance of the enterprise."  Doc. 2533-2, p. 6.  "The evidence established that Amador Rivera began as a Soldier in the Los Solidos enterprise and eventually became an Enforcer and held a Superior position."  *Id.* Rivera thus "occupied a position of leadership within the Hartford Chapter of Los Solidos."  *Id.*

[18]  When  the  defendant  has  been  convicted  of  multiple  counts,  the federal Sentencing Guidelines require the Court to group the counts resulting in conviction into distinct Groups of Closely-Related Counts, determine the offense level applicable to each group, and finally determine the combined offense level applicable to all groups taken together.  *See* U.S.S.G. §§ 3D1.1 - 3D1.4. *See generally* 21 Am. Jur. 2d Criminal Law § 804 ("Grouping of multiple counts").  The Court takes the offense level applicable to the group with the highest offense level and increases that level by

as the maximum offense level authorized by the Sentencing Guidelines. *Id.*, p. 17 (¶ 38); Doc. 2533-4, p. 3.[19]

Next, Rivera's criminal history category was calculated based on his prior convictions. Based on a total of 12 criminal history points, Rivera had a criminal history category of V. Doc. 2533-2, (PSR), p. 19 (¶ 19).[20] The Court explicitly adopted V as the applicable criminal history category for Rivera. Doc. 2533-4, p. 4. Under U.S.S.G. § 1B1.3, regarding the relevant conduct in Counts One, Two and Ten, the maximum term of imprisonment on Counts One and Two was life imprisonment.[21] *See* Doc. 2533 (Retro-Crack Addendum), p. 1.

At Rivera's original sentencing, Judge Dorsey adopted the Probation Office's findings that

a corresponding number of units depending on the difference in levels between the lower and higher group. *See* table appearing in U.S.S.G. § 3D1.4.

Here the higher group, Group Two, had a base offense level of 45 and the lower group, Group One, had a level of 37. Because the difference between Groups Two and One was eight (45-37), 1.5 units were added to make a combined offense level of 46. Specifically, one unit was added for the higher level group and ½ unit was added for the lower group (which was "5 to 8 levels" less serious).

[19] In his Statement of Reasons with respect to Rivera's 1996 sentence, Judge Dorsey adopted the PSR's recommendation regarding offense level and in fact applied base level 43 in calculating Rivera's sentence. *See* SOR (Doc. 2533-4), at p. 5 ("The offense level is found to be level 43").

[20] As the Probation Office noted, Rivera had "ten criminal history points resulting from his convictions" and two additional points from his timing in committing the offenses at hand "less than two years after his release on May 27, 1993 from incarceration." Doc. 2533-2 (PSR), p. 19 (¶ 44). According to the Sentencing Table, Rivera's total of 12 criminal history points established a criminal history category of V. *Id*.

[21] As the Government pointed out, ¶ 80 of the PSR "incorrectly stated the defendant's criminal history category was VI, rather than V." Doc. 2535, p. 13 n. 15. "Nonetheless, a life sentence is applicable to any defendant who has an adjusted base offense level of 43 and falls into either criminal history category V or VI." *Id.*

"the VCAR offense is ultimately governed by § 2A1.1" and thus held that "the offense level is . . . level 43." Doc. 2533-4, p. 3.   He consequently sentenced Rivera  to life imprisonment on Counts One and Two.  *Id.*, p. 4.

When Rivera was resentenced on January 15, 2003, the Court made reference to Connecticut's state statutes regarding conspiracy to murder, Conn. Gen. Stat. §§ 53a-48 and 53a-54a, to conclude that "an attempt or conspiracy to commit a class A felony [murder] is a class B felony." Applying Connecticut law, because the maximum sentence for a Class B felony was twenty years, the Court lowered Rivera's sentence from life to twenty years.   2003 WL 22359252, at *3. However, as the Government correctly pointed out in its response, with respect to the Court's rationale for lowering Rivera's sentence on Counts One and Two (Conspiracy to Murder Latin Kings), Rivera  "was not being sentenced under those state statutes, but rather he was being sentenced for RICO and RICO Conspiracy offenses that involved a racketeering enterprise that had not only conspired to murder multiple people, but in fact had done so."  Doc. 2535, p. 13 n. 16. Therefore, the "proper calculation of the defendant's sentencing guideline range [continued to] exceed[] the 20 year statutory maximum cited by the Court and, indeed, called for a sentence of life imprisonment." *Id.*, p. 13.[22]

_____

[22]  Rivera further received a non-guidelines sentence in that "under [U.S.S.G.] § 5G1.2(d), his guideline sentence would have been at least 70 years [20 plus 20 plus 10 plus 20, for the four counts]." Doc. 2533-3, p. 1.  Under that provision, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run *consecutively*, but only to the extent necessary to produce a combined sentence equal to the total punishment." 5 U.S.S.G. § 5G1.2(d) (emphasis added).

With respect to applying Amendment 750, the guideline range must be determined pursuant to § 1B1.1(a) *before* consideration may be given to any  *departure* provision in the Guidelines Manual. *See* Doc. 2533, p. 2;  U.S.S.G. § 1B1.1(b).

In sum, Rivera's convictions for the offenses in Counts One, Two and Ten included conspiracy to murder Latin Kings, some of whom were actually murdered by Rivera's fellow conspirators.  As set forth in the PSR at ¶ 26, the base offense level for this conduct, *resulting in the death of one or more victims*, was 43, the highest base offense level calculus under the Sentencing Guidelines.

Pursuant to 18 U.S.C. § 3582 (c)(2), a defendant's sentence may only be reduced if he was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."[23]  Here, even if Amendment 750 were applicable to Rivera's sentence, applying to sale or possession of cocaine *base* or crack instead of cocaine powder, his combined and overall sentencing guideline range for his offenses would not be lowered.  As the Government asserts, that "overall guideline range would remain unchanged because of [Rivera's] conviction for conduct relating to the Conspiracy to Murder Latin Kings," and would still result in a combined base level of 43 and a potential maximum sentence of "life imprisonment."[24]  Doc. 2535, p. 14.  *See, e.g.,  U.S. v. Rodriguez-Reyes*, 714 F.3d 1, 16 (1st Cir. 2013) (upholding district court's

---

[23]   *See United States v. Leonardo*, No. 12–3685–cr, ___F. App'x ___, 2013 WL 3596062, at *1 (2d Cir. July 16, 2013) ("[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement [U.S.S.G. § 1B1.10(a)(2)(B)] and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [an amendment] does not have the effect of lowering the defendant's applicable guideline range.").

[24]   Because the base offense level for Group Two was 45 (prior to adjustment), the combined base offense level of all of Rivera's counts would have to be at least that level.  U.S.S.G. § 3D1.4 (" The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and *increasing* that offense level by the amount indicated in the [indicated] table") (emphasis added).  In other words, even if the offense level for Group One, relating to controlled substances offenses, were lowered to the point where no units would be added (*i.e.*, by 9 or more levels), the combined base offense level for all of Rivera's counts would still be 45 and then capped at 43, the maximum offense level authorized by the guidelines.  *See* Doc. 2533-2 (PSR), p. 17 (¶ 38).

18

application of first-degree murder cross-reference to defendant convicted of conspiracy with intent to distribute narcotics, 21 U.S.C. §§ 841 and 860, where defendant engaged in predicate acts of planning to murder a rival and masterminding 3 related shooting deaths).[25]

In sum, a reduction in Rivera's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with the policy statement in § 1B1.10 because Amendment 750, "if applicable to the defendant, . . . does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." U.S.S.G. § 1B1.10, Commentary captioned "Application Notes," at n.1 (A). Put simply, eligibility for a reduced sentence is only triggered when the amendment lowers the guideline range (*i.e.*, the guideline range that corresponds with the *offense level* and *criminal history category* determined pursuant to § 1B1.1(a), which in turn is determined before consideration of any departure provision in the Guidelines Manual or any variance). *Id.* (emphasis added). Here, the amendment does not lower Rivera's applicable guideline range due to the operation of another guideline or statutory provision, which was related to his predicate acts of conspiracy to murder. *See* U.S.S.G. §§ 2E1.3 2A1.5(c), and § 2A1.1.

---

[25] In *Rodriguez-Reyes*, "the district court did not rely on the drug quantity in reaching Rodríguez's sentence; rather, the court applied the cross-reference to § 2A1.1." 714 F.3d at 16. The Court of Appeals explained that " with regard to the murders on which the [district] court based the use of the cross-reference, [it made] specific findings as to Rodríguez's personal involvement and responsibility." *Id.* It was sufficient that Rodriguez had "participated in the planning and execution" of certain rivals' murders, even though he was not the one who ultimately fired the murder weapons. *Id.* "That finding alone would support the application of the first-degree murder cross-reference, *rendering a drug quantity finding superfluous*." *Id.* (emphasis added).

**IV.**   **CONCLUSION**

For all of the foregoing reasons, Rivera's *pro se* motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) [Doc. 2532] is DENIED.  Rivera is ineligible for a reduced sentence under Amendment 750.  The Clerk of the Court is respectfully directed to serve Rivera with a copy of this Ruling.

It is SO ORDERED.

Dated: New Haven, Connecticut
       October 7, 2013

                                    */s/Charles S. Haight, Jr.*
                                    CHARLES S. HAIGHT, JR.
                                    SENIOR UNITED STATES DISTRICT JUDGE