```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA      :
                              :
                              :
     v.                       :
                              :
                              : Crim. No. 3:94-cr-00223 (AWT)
                              :
AMADOR RIVERA, JR.            :
```

**ORDER DENYING MOTION FOR RESENTENCING UNDER THE FIRST STEP ACT**

Defendant Amador Rivera has moved for a sentence reduction under Section 404 of the First Step Act, based on application of the Fair Sentencing Act of 2010, and Section 603 of the First Step Act, commonly referred to as "compassionate release". For the reasons set forth below, his First Step Act Motion for Immediate Release or Resentencing (ECF Nos. 2609 and 2621) is hereby DENIED.

I

Amador Rivera was indicted in February 1996 and subsequently charged in the Third Superseding Indictment, together with twelve co-defendants, for his role in the Los Solidos gang, an enterprise which engaged in drug trafficking and acts of violence, including murders, assaults, kidnapping and robberies. See Third Superseding Indictment (ECF No. 2611-2). After a jury trial, Rivera was convicted of RICO, in

violation of 18 U.S.C. § 1962(c) (Count 1); RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count 2); VCAR conspiracy to murder Latin Kings, in violation of 18 U.S.C. § 1959(a)(5) (Count 10); and conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 & 841(a)(1) (Count 34). See Rivera v. United States, No. Cr. 3:94CR223 (PCD), Civ. 3:01CV76 (PCD), 2003 WL 22359252 at *1 (D. Conn. filed Jan. 14, 2003).

On December 5, 1996, Rivera was sentenced to life imprisonment on Counts 1, 2 and 34, and a ten-year term of imprisonment on Count 10, all to run concurrently, resulting in an effective life sentence. See id. In January 2003, Rivera's sentences were vacated in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). See Rivera, 2003 WL 22359252 at *3 ("Absent an allegation and a jury finding as to a quantity of drugs beyond a reasonable doubt which would permit a sentence higher than the maximum for simple possession of an unspecified amount of drugs, the sentence imposed for a violation involving cocaine may not exceed the maximum sentence provided in 21 U.S.C. § 841(b)(1)(C) of twenty years.").

Rivera was resentenced to a 40-year effective term of imprisonment. The sentences on Counts 1, 2 and 34 were modified to be 20 years on each count, and the court then ordered the sentences on Counts 1 and 10 to run concurrently with each other, the sentences on Counts 2 and 34 to run concurrently with

2

each other, and the combined sentences on Counts 1 and 10 to run consecutively to the combined sentences on Counts 2 and 34. See Rivera, 2003 WL 22359252 at *3.

The court ordered that "the term of supervised release is modified to three years on each of the four counts to be served concurrently and consecutively . . . for an effective term of supervised release of six years." See id. In April 2003 the court amended the judgment to provide that all periods of supervised release be served concurrently, for a total effective supervised release term of three years. See United States v. Rivera, 976 F. Supp. 2d 152, 155 n.5 (D. Conn. 2013).

II

Under Section 404 of the First Step Act, "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222.

Also, the First Step Act amended, inter alia, Section 3582(c)(1)(A) of Title 18 of the United States Code. That provision requires as an initial matter that

>the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

18 U.S.C. § 3582(c)(1)(A). Assuming a defendant has exhausted administrative remedies, a court may reduce a term of imprisonment under Section 3582(c)(1)(A)(i) if, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable, the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission". 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination courts should "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guidelines § 1B1.13, limits the district court's discretion." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).

Rivera has satisfied the requirement with respect to exhaustion of administrative remedies.

### III

As to Section 404, it is undisputed that the defendant has completed serving the sentence for the crack cocaine offense in Count 34, and the parties are in agreement that the conviction

4

in Count 34 is a "covered offense" under the First Step Act. There has been extensive briefing about whether Counts 1, 2 and 10 are "covered offenses" and whether the presence of Count 34 gives the court the power to reduce all of the defendant's sentences. The court need not resolve these questions in this case, however, because regardless of how they are resolved, the court concludes that the Section 3553(a) factors weigh decisively against a sentence reduction.

In addition, with respect to compassionate release, the court concludes that, even assuming arguendo that Rivera can establish extraordinary and compelling reasons for a sentence reduction, the Section 3553(a) factors also weigh decisively against a sentence reduction on that basis.

> As summarized in United States v. Rivera,
>
> The Government's proof at trial established that Amador Rivera was a member of an enterprise which engaged in drug trafficking and acts of violence, including murders, assaults, kidnapping [sic] and robberies, which were all done in furtherance of the enterprise." Doc. 2533-2, p. 6. The evidence established that Amador Rivera began as a Soldier in the Los Solidos enterprise and eventually became an Enforcer and held a Superior position." Id. Rivera thus "occupied a position of leadership within the Hartford Chapter of Los Solidos." Id.

United States v. Rivera, 976 F. Supp. 2d 152, 161 n.17 (D. Conn. 2013) (quoting the Presentence Report).

While the government's proof at trial included evidence with respect to drug trafficking, the record here is clear that

5

Rivera's 40-year total effective sentence imposed in 2003 was driven by the fact that he engaged in a conspiracy to commit murder, not by the conviction for trafficking crack cocaine, and that is the reason Rivera is in prison today. As the government explains in its opposition:

> Rivera's sentences on the RICO and VCAR offenses would not have changed had the Fair Sentencing Act been in effect. His sole narcotics sentence was imposed under § 841(b)(1)(C). Rivera's drug offense was punishable by a zero-to-twenty-year range, the same as today. . . . Second, the initial 20-year tranche of his 40-year sentence was imposed not just for drug trafficking but also for RICO conspiracy . . . . The second 20-year tranche of his 40-year sentence was imposed for RICO and VCAR. As the PSR makes clear, Rivera's prior trafficking conduct played no role in the calculation or imposition of the RICO and VCAR sentences, that is, Group 2 consisting of Counts 1, 2, and 10, was driven strictly by Racketeering Act 4 – Conspiracy to Murder Latin Kings and Associates.

Gov't's Revised Opp'n (ECF No. 2644) at 17. "In Rivera's case, a victim, Angel Serrano, actually died as a direct result of the conspiracy to murder." Rivera, 976 F. Supp. 2d at 161.

Consequently, this is a case where very substantial weight must be placed on the seriousness of the offense.

In the court's view, a number of the arguments the defendant makes in support of his motion have no persuasive power with respect to Rivera. He notes that "there has been a seismic paradigm shift in the way courts approach drug cases and, in particular, sentencing in drug cases, since the time that Mr. Rivera was prosecuted." Def's Mem. in Supp. (ECF No.

6

2612) at 2-3. However, as discussed above, what drove Rivera's sentence, and the reason he is still in prison, is the conspiracy to murder rival gang members. On a related note, he points out that

> Eighty-seven percent of respondents in one national survey indicated they would be more likely to support alternatives to incarceration for non-violent justice-involved individuals (40% when it comes to a violent crime) if research consistently showed there are ways, other than incarceration, to reduce the likelihood that they will commit new crimes (National Institute of Corrections [NIC], n.d.).

Id. at 35. Thus, even the survey on which the defendant relies reflects the fact that a different perspective is appropriate when dealing with violent crimes versus non-violent offenses.

The defendant points out that "[p]rior to his sentence in this case, the longest sentence that Mr. Rivera ever served was between 16 and 18 months. He is now serving a sentence more than 20 times as long." Id. at 11. But this argument is undermined by the fact that the Presentence Report reflects that Rivera had twelve criminal history points and thus was in Criminal History Category V at the time he was sentenced, that his prior convictions included convictions for possession of narcotics (two-year sentence), assault on a police officer (three-year sentence) and carrying a pistol without a permit (five-year sentence suspended after two years). Moreover, he had been

7

released from imprisonment for less than two years prior to committing the offenses.

The defendant points out that Miguel Berrios, who was the confessed shooter of Angel Serrano, received a significantly shorter sentence than Rivera because Serrano testified at trial. But there is nothing incongruous or unfair about a defendant who pled guilty and testified at his co-defendant's trial receiving a materially different sentence.

The defendant makes the point that the "fact that the conspiracy committed acts leading to at least one death does not bar relief." Def.'s Resp. to Gov't's Notice of Change in Position (ECF No. 2645) at 3. The court agrees. But that does not mean that the fact should not be given substantial weight.

The defendant makes a number of points to which the court does give weight. Rivera directs the court's attention to the fact that he has been employed for most of the time he has been incarcerated, has participated in numerous programs and has not incurred any tickets since 2008. He obtained his GED in 2014 and he "made it to a low-security level institution at Elkton, Ohio based upon his good behavior and positive prison record." Def.'s Mem. in Supp. (ECF No. 2612) at 13. While all of that is commendable, it does not establish extraordinary rehabilitation in terms of either effort or results. Rivera also highlights the fact that he was between the ages of 21 and 23 when the offense

8

conduct occurred, and the fact that because of his age he is now statistically unlikely to recidivate.

However, in the court's view, these considerations individually and in the aggregate, should be given materially less weight than the need for Rivera to serve a sentence that reflects the seriousness of the offense.

In support of his request for a sentence reduction based on compassionate release, Rivera argues (in addition to the arguments already referenced) that although he contracted COVID-19 and survived, he has co-morbidities (including an increased BMI and the fact that he is a Hispanic male) that would make a second COVID-19 infection more severe and more dangerous for him. In addition, Rivera reports that, unfortunately, his mother is in declining health, with a number of serious medical conditions including kidney disease, dementia, diabetes and a heart condition. His mother's doctor reports that she has an "impending need for constant treatment" and "will require more home care". Suppl. Update, Ex. E (ECF No. 2696-1) (letter from Elizabeth Darsan, M.D.). The doctor reports that "[i]t would be beneficial for Rosa to have an increase in home care providers and family to take care of her, including her son Amador." Id. In other words, Rivera's presence would be helpful.

Even taking into account these additional considerations, the court remains of the view that the considerations put forth

9

by Rivera in support of his request for a sentence reduction are outweighed by the need for the sentence in his case to reflect the seriousness of the offense. In the court's view, the goal of having the sentence imposed reflect the seriousness of the offense would be seriously undermined by reducing Rivera's sentence.

It is so ordered.

Signed this 28th day of September 2023 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
